In the Matter of the Application of THE TRUSTEES OF THE NON-MAG-NETIC WATCH COMPANY of America, for the Voluntary Dissolution of said Corporation.

EIDGÆNOESSISCHE BANQUE, Appellant; CHARLES S. McCULLOH, as Receiver of THE NON-MAGNETIC WATCH COMPANY of America, Respondent.

*Bill of lading — confers title on the person to whom it is issued — contract for the purchase of an article not in existence — the buyer acquires no title until delivery — manufacturers' lien — goods may be pledged to the extent of the lien.*

A bill of lading confers the legal title to the goods upon the person in whose favor it is issued.

A contract for the construction of an article is executory and remains so until the article is completed.

If a person contract with another for a chattel not in existence at the time of the contract, though he pay him the whole value in advance, and the other proceeds to execute the order, the buyer acquires no property in the chattel until it is finished and delivered to him.

A contract was entered into between Aeby & Co., a corporation engaged in the manufacture and sale of watches in Switzerland, and the Non-Magnetic Watch Company of America, by which the former company agreed to manufacture watch movements for the latter. By the terms of the contract Aeby & Co. agreed to manufacture solely for the Non-Magnetic Watch Company, and agreed to sell and let the said company have all they could make, and the Non-Magnetic Watch Company agreed to order and accept all Aeby & Co. could make, up to 300 a day, at prices which were agreed upon in the contract. The Non-Magnetic Watch Company was not bound to accept or receive any watch movements unless they were made according to "the specifications and the standard of excellence as agreed upon." The materials of which the watch movements were to be made belonged to Aeby & Co.; the Non-Magnetic Watch Company, however, supplied the hair springs and the balances, which it sold to Aeby & Co., and which constituted but a small part of the material used in the manufacture of the watches.

In December, 1889, Aeby & Co. shipped to America three cases of the watches manufactured by it under the contract, consigned to one Nathan Bushnel, at New York. The consignor drew two drafts against the consignment of $5,000 each, directed to the consignee, and later drew another draft against the consignment directed to the consignee, and attached to the drafts the bills of lading taken for the watches, and procured the Eidgenoessische Bank, a banking corporation at Berne, Switzerland, to discount the drafts, and at the same time transferred to it the bills of lading as security for the payment of the drafts. The drafts were accepted by the consignee and at maturity were

duly presented for payment, which being refused, they were protested. The Non-Magnetic Watch Company in the meantime had gone into the hands of a receiver. The bank demanded the watches from the consignee and the receiver also demanded them.

In a proceeding instituted to determine to whom the watches should be delivered, *Held*, that the firm of Aeby & Co. were the owners of the watch movements until they were delivered;

That by the contract it was the intention of the parties that the title to the watch movements was not to vest in the Non-Magnetic Watch Company until their acceptance by it;

That when the watch movements were consigned to Bushnel by Aeby & Co. they belonged to Aeby & Co., and the transfer and delivery of the bills of lading with the three drafts was a symbolical delivery of the goods, and the transferee thereby acquired title to the property and was authorized to hold it until the loan made by it thereon was paid;

That the watch movements belonged to the Eidgenoessische Bank, and it was entitled to the possession of them, and that the receiver had no title to the property and no right to its possession;

That Aeby & Co. also had a lien upon the watch movements for the labor bestowed upon them, and that, as such lienors, they also had a right to pledge the watch movements to the extent or amount of the indebtedness of the Non-Magnetic Watch Company to it.

APPEAL by the claimant, the Eidgenoessische Banque, from a judgment of the Supreme Court in favor of Charles S. McCulloh, as receiver of the Non-Magnetic Watch Company of America, entered in the office of the clerk of the county of Westchester on the 12th day of January, 1895, upon the report of a referee which adjudged that the receiver of the Non-Magnetic Watch Company of America was entitled to the net proceeds derived from the sale of certain watch movements, also from the report of said referee, and also from an order made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 1st day of December, 1894, confirming said referee's report and directing judgment to be entered in accordance therewith.

*E. H. Benn* and *Julius Goldman*, for the appellant.

*Theo. H. Silkman*, for the respondent.

DYKMAN, J.:

The Non-Magnetic Watch Company, which was a domestic corporation, filed a petition for a voluntary dissolution, and on the 12th

day of October, 1889, Charles S. McCulloh was appointed temporary receiver, and afterward he was appointed permanent receiver of the property of the company.

The Eidgenoessische Bank (a name which in the French language signifies Banque Federal, and which in this opinion will be called the Federal Bank for convenience) is a banking corporation at Berne, Switzerland. Aeby & Co. was a corporation engaged in the business of manufacturing and selling watches at Madretsch, in Switzerland.

Contracts were made between Aeby & Co. and the watch company, by which the former agreed to manufacture watch movements of American sizes for the watch company only. By the contracts Aeby & Co. agreed to manufacture solely for the watch company, and agreed to sell and let the watch company have all they could make, and the watch company agreed to order and accept all they could make up to 300 a day, at prices which were agreed upon in the contract. The watch company was not bound to accept or receive any watch movements unless they were made according to "the specifications and the standard of excellence as agreed upon."

The materials of which the watch movements were made belonged to Aeby & Co. The watch company supplied Aeby & Co. with the hair springs and the balances, but they were sold to Aeby & Co., and constituted but a small part of the material used in the manufacture of the watches. In December, 1889, Aeby & Co. had in their possession three cases of watches manufactured by them under the contract with the watch company, of the value of 28,600 francs, which they shipped to America, consigned to Nathan Bushnel, at New York, through L. W. Morris & Sons, forwarding agents, and took bills of lading therefor.

Aeby & Co., the consignors, drew two drafts or bills of exchange against the consignment of $5,000 each, directed to the consignee Bushnel, and on the 20th day of January, 1890, they drew another draft or bill of exchange against the consignment, directed to the consignee, and then attached the bills of lading to the drafts, and procured the Federal Bank to discount the drafts, transferring to the bank at the same time the bills of lading for or as security for the payment of the drafts. The drafts were accepted by Bushnel,

the consignee, and at maturity were duly presented for payment, and payment being refused, they were protested for non-payment.

The bank then demanded of the consignee the three cases of watches, and the receiver of the watch company has also demanded them, claiming as such receiver to own them, on the ground that the watches were made by Aeby & Co. for the watch company, and consequently belonged to the latter company, and that Aeby & Co. had no right to pledge them or draw drafts against them, and that no title or right to the watches passed by the transfer of the bills of lading. It was to determine these conflicting claims that the referee was appointed. At the time of the appointment of the referee it was agreed between the parties that the watches should be sold and the proceeds held in their place to abide the event of these proceedings. The referee found and decided that Aeby & Co. were not the owners, but only bailees of the watches in question, and that the title was in the watch company. He, therefore, concluded and decided that the bank, by the transfer to it of the bills of lading as security for the discount and advances made to Aeby & Co., did not acquire any right or title to the watches. Upon that report a judgment was ordered, and the Federal Bank has appealed from the judgment and also from the report of the referee upon which it was based, and from the order confirming the referee's report, and directing judgment to be entered thereon. The report of the referee is not in accordance with the law which controls the case. The watch company contracted with Aeby & Co. to manufacture for it watch movements of American sizes for stipulated prices to be paid therefor.

Aeby & Co. furnished all the materials, for although the watch company supplied the hair springs and balances they were purchased of it by Aeby & Co., and so became the property of the latter. Under the well-settled principles of law, the firm of Aeby & Co. were the owners of the watch movements until they were delivered. A contract for the construction of an article is executory and remains so until the thing is completed. While it is competent for parties to a contract for the construction of an article to provide for the vesting of the title thereto at any time, in this case it is to be gathered from the contract that the intention of the parties was that the title of the article was not to vest in the watch company until

their acceptance by it, for the company was not bound to accept any of the articles unless they were made according to " the specifications and the standard of excellence as agreed upon."

The following authorities support these conclusions : *Andrews* v. *Durant* (11 N. Y. 35) ; *Gregory* v. *Stryker* (2 Den. 628).

In fact, the decisions in this country are all in harmony upon the question. In the *Andrews* case one of the opinions stated the rule as follows: " The general rule is that if a person contract with another for a chattel which is not in existence at the time of the contract, though he pay him the whole value in advance, and the other proceeds to execute the order, the buyer acquires no property in the chattel till it is finished and delivered to him."

When, therefore, the three cases of watches in question were consigned to Nathan Bushnel by Aeby & Co., the property belonged to the latter, and the transfer and delivery of the bill of lading with the three bills of exchange was a symbolical delivery of the goods, and the Federal Bank thereby acquired title to the property and was authorized to hold it until the loan it made thereon was paid. (*Bank of Rochester* v. *Jones*, 4 N. Y. 497; *City Bank* v. *Rome, W. & O. R. R. Co.*, 44 id. 136; *Mechanics & Traders' Bank* v. *F. & M. Nat. Bank*, 60 id. 47.)

A bill of lading confers the legal title of the goods upon the person in whose favor it is issued. (*Farmers & Mechanics' Bank* v. *Logan*, 74 N. Y. 568.)

As the drafts remained unpaid when the Federal Bank demanded the three cases of watches of the consignee, the property belonged to the bank, and it was entitled to the possession of the goods. The receiver had no title to the property and no right to its possession. He occupied the same position as the watch company, and the rights of the Federal Bank were paramount to both.

The contention of the receiver was, that as the watch company furnished the springs and balances the watches belonged to that company. The springs and balances composed but a small part of the movements required to be used in the construction of a watch.

It required upper and lower plates, pillars, train, dial, hands, pendants and jewels.

Upon the theory of the watch company, therefore, this would be a case where the principal part of the materials were furnished by

the manufacturer. In such a case the title to the article is in the maker until its completion and delivery. (*Gregory* v. *Stryker*, 2 Den. 628, and cases there cited.)

Upon either theory, therefore, the claim of the receiver is baseless. It is claimed further, in behalf of the watch company, that Aeby & Co. was indebted to the watch company in a large amount, and it could hold the property for that reason. That position is also untenable, for we have already seen that even a payment in advance of the entire price of the article to be made will not place the title in the buyer until it is finished and delivered.

That being the rule, certainly an advancement of money during the progress of the work will have no greater effect than an absolute payment of the entire price.

The errors disclosed by the examination already made require a reversal of the judgment, but even if all the claims of the watch company were conceded, and it stood admitted that all the materials used in the construction of the watches belonged to the watch company, the manufacturers would then have a lien upon the manufactured articles for the labor bestowed upon them. (Story on Bailments, § 440.)

As a party having a lien upon goods may pledge them to the extent of his lien, Aeby & Co., in this case, if they had no other rights than as lienors, had the right to pledge the goods to the extent or amount of $50,000, the watch company being indebted to them on the merchandise account in that amount. If the title to the watches was, as the receiver claims, in the watch company all the time, and the indebtedness to Aeby & Co. was for the work done and materials furnished by them all under one contract, then Aeby & Co. had a lien on those three cases of watches, not only for the work done and materials furnished in their manufacture, but for the sum remaining unpaid on the watches previously delivered. (*Morgan* v. *Congdon*, 4 N. Y. 552; *McFarland* v. *Wheeler*, 26 Wend. 467.)

It therefore follows, conclusively, that the watch company had no right or title in the property in question, and that the same belonged to the Federal Bank, and should have been delivered to it upon its demand.

The referee's report, and the order confirming the same, and the judgment entered thereon, must all be reversed, with costs, and as the facts are substantially undisputed, and cannot be changed upon a second trial, the judgment must be entered in favor of the Federal Bank.