THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v.
MANNIE GLUCK, Appellant.

LARCENY — WHEN RETAINING POSSESSION OF GOODS DELIVERED
UNDER CONDITIONAL SALE DOES NOT CONSTITUTE CRIME.  Where sepa-
rate agreements executed at the same time recited, one, that goods con-
signed were to be returned upon demand, no title to pass; the other, that
upon the delivery of the goods the consignee should "deposit" with the
consignor a specified sum and thereafter specified weekly sums until the
full value of the goods was received, when they should become the prop-
erty of the consignee, all sums deposited to be the property of the con-
signor, and if default should be made in any deposit, the latter might
deliver to the consignee similar articles equivalent in value to the amount
already deposited, and the agreement should then be deemed fulfilled,
such agreements must be read together, and so read, constitute a condi-
tional contract of sale (L. 1897, ch. 418, § 10), although each agreement
contains a clause that no other agreement should be considered a part
thereof.  Under such contract, the vendor retains title to the goods and
acquires title to all sums paid.  Until default in payment, however, the
vendee may retain possession.  If he defaults, the vendor may demand
the return of the goods but must deliver to the vendee similar articles, to
the value of the amount paid.  A demand unaccompanied by a tender of
such articles or of the amount paid does not terminate the contract.  The
vendee has the right to retain possession of the goods until such tender,
and, in the absence thereof, he is not chargeable with larceny for refusing
to return them.

*People* v. *Gluck*, 117 App. Div. 432, reversed.

(Argued March 13, 1907; decided April 2, 1907.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered Feb-
ruary 8, 1907, which affirmed a judgment of the Court of
General Sessions of the Peace in the county of New York,
rendered upon a verdict convicting the defendant of the crime
of grand larceny in the second degree.

The defendant was indicted for the crime of grand larceny
in the second degree in that on the fifth day of January, 1906,
at the borough and county of New York, being the bailee and
agent of one John Behrens, and as such having in his posses-
sion a finger ring worth one hundred and seventy-five dollars

of the goods, chattels and personal property of said Behrens, he "did feloniously appropriate the said goods, chattels and personal property to his own use with intent to deprive and defraud the said John Behrens of the same and * * * did then and there and thereby feloniously steal, etc." There was another count in the indictment for taking said ring by force, but no evidence was given in support thereof and the case was not sent to the jury on that theory.

Upon the trial it appeared that on the fourth of January, 1906, the defendant, who was then about nineteen years of age, applied to John Behrens, a dealer in jewelry, to purchase a diamond ring, and, after selecting a stone, requested that it be properly set. The next day Mr. Behrens delivered the completed ring to the defendant, who paid him five dollars in cash and delivered to him a check for twenty-five dollars drawn on the Bronx Borough Bank by the firm of Grossman & Rohrlich, payable to the order of the defendant and indorsed by him. At the same time the defendant signed a paper in the following form :

"Consigned on memorandum by John Behrens & Company to Mr. Mannie Gluck, New York, January 5th, 1906. The under-mentioned goods are consigned to you to be returned within ——— ·or upon demand. None of them are sold nor does the title thereto pass. Conditions and agreements not expressly herein included shall not be considered as part hereof. All risks are assumed by consignee.

"One 14 Kt Solid Gold Tooth Ring Roman colored, set with solitaire diamond weighing 3/4 1 1/16 1/64, value 175. Goods accepted subject to conditions above expressed."

Another· paper, called a "deposit agreement," was signed by both parties when the ring was delivered to the defendant. By that instrument, which recited a consideration of one dollar, it was agreed between the defendant as party of the first part and John Behrens & Company, party of the second part, "that the first party will deposit or cause to be deposited with said John Behrens & Co., party of the second part, thirty dollars upon the execution of this instrument, eight

dollars January 13th, and three dollars each week thereafter beginning on January 15th, 1906, until the sums so deposited amount to one hundred and seventy-five dollars; that the first party may not at any time withdraw any of said deposits; that each and all of said deposits when made shall be and become the absolute property of said second party;  *  *  * that when said deposit shall amount to one hundred and seventy-five dollars  *  *  *  said second party will deliver to said first party to and for his own use forever the following described chattels, viz., one diamond ring. It is further expressly agreed that if the first party at any time defaults any of said deposits, the second party may deliver to the first party articles, as near as may be, of the same nature, manufacture and style as the chattels herein agreed to be delivered but reasonably worth the sums so deposited and upon delivery thereof this agreement shall be deemed fulfilled and satisfied, and it is further expressly agreed that conditions and agreements not expressly included herein shall not be considered as a part hereof." Both papers were dated January 5th, 1906, and both were retained by Mr. Behrens. No copy was delivered to the defendant.

On the 16th of January, 1906, Behrens saw the defendant at his place of business and holding out the consignment memorandum said, "The court requires me to make a personal demand in the presence of a witness and I now demand the return of this diamond ring." The defendant said, "All right. I accept your demand," but he did not give up the ring, which so far as appears was not at the place where the demand was made. Behrens and his son testified that this was all that was said or done on the occasion of the demand, but the defendant testified that he then said he would surrender the ring if Behrens would give him "a release and my $25 check and the five dollars in cash." The defendant also testified that when he bought the ring the defendant told him the diamond weighed a carat and a fourth; that on the same day that the ring was delivered, he had the stone weighed and upon finding that it weighed much less than was repre-

sented, he requested the makers of the check to stop payment thereon, and at once offered the ring back to Behrens, provided he would give a release and return the check and cash paid down. He made the same offer at the trial. The check was read in evidence and showed that payment thereof had in fact been stopped. There was nothing to show that the check would not otherwise have been paid. Behrens denied representing that the stone weighed a carat and one-fourth or that the defendant ever offered to return the ring. At some time, but at what date does not appear, he recovered a judgment against the defendant for $170 damages for the conversion of the ring. There was no evidence showing that the defendant had disposed of the ring, or that he was not in a situation to return it when the demand was made.

This is substantially all the material evidence, and when both parties rested the defendant asked the court " to withdraw the case from the consideration of the jury on the ground that it is not a criminal action, and the People have not made out a cause of action," but the motion was denied and an exception taken. The jury rendered a verdict of guilty of grand larceny in the second degree and the court sentenced the defendant to imprisonment " in state prison, at hard labor for the term of not less than one year and not more than four years." Upon appeal to the Appellate Division the judgment was affirmed, two of the justices dissenting, and the defendant now appeals to this court.

*Isadore L. Pascal* for appellant. Neither the proofs of the People's case herein, nor all the proofs taken together, warranted the submission of the case to the jury. (*People* v. *Ledwon,* 153 N. Y. 10.)

*William Travers Jerome, District Attorney (E. Crosby Kindleberger* of counsel), for respondent. The proof given by the People brought the case squarely within the express language of section 528 of the Penal Code, and the defendant was properly convicted of the crime of grand larceny in the

second degree. (Clark & Russell on Crimes, § 63b; *People* v. *Flack*, 125 N. Y. 324; *People* v. *Baker*, 96 N. Y. 340; *People* v. *Corcoran*, 34 Misc. Rep. 332; *People* v. *Snyder*, 110 App. Div. 699; *People* v. *Taylor*, 138 N. Y. 398; *People* v. *Hoch*, 150 N. Y. 291; *People* v. *Ferraro*, 161 N. Y. 365; *People* v. *Egnor*, 175 N. Y. 419; *People* v. *Rodawald*, 177 N. Y. 408; *People* v. *Boggiano*, 179 N. Y. 267.)

VANN, J. The Penal Code provides that " A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either

" 1. Takes from the possession of the true owner, * * *; or,

" 2. Having in his possession, custody, or control, as a bailee, servant, attorney, * * * or as a person authorized by agreement, * * * to hold or take such possession, custody, or control, any money, property, * * * appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof; steals such property and is guilty of larceny." (Penal Code, § 528.) If the property thus stolen is worth more than twenty-five dollars but not more than five hundred dollars the crime is grand larceny in the second degree. (Id. § 531.)

The question presented by this appeal is whether there was sufficient evidence to warrant the jury in convicting the defendant of the crime thus defined. In civil cases the rule is that a preponderance of evidence is sufficient to establish the fact at issue, but in criminal cases the law requires sufficient evidence to establish the fact of guilt beyond a reasonable doubt. " The presence of some proof is not sufficient to warrant the submission of a criminal case to the jury; and whenever a criminal charge is submitted to the jury, against the objection and exception of the defendant, upon proof which falls below the standard of rebutting the presumption of inno-

cence and of proving guilt beyond a reasonable doubt, required by the statute (Code Cr. Pro. § 389) to warrant a conviction, a question of law is presented." (*People* v. *Ledwon*, 153 N. Y. 10, 18; *People* v. *Owens*, 148 N. Y. 648, 651.) There was no evidence to warrant the jury in convicting the defendant of an intent to steal the ring when he first obtained possession thereof and the case was not tried on that theory. As he was in lawful possession of the ring until the demand was made, at least, the question is whether there was enough evidence to prove that he then intended to deprive the true owner of his property or to appropriate the same to his own use.

The rights of Behrens and the defendant are defined by the consignment receipt and the deposit agreement, which, as they were executed at the same time, between the same persons and with reference to the same subject, must be read together as one instrument. They were drawn by Behrens himself, who filled out a printed blank used by him in his business, and hence any ambiguity therein must be resolved against the one who created it. (*Kratzenstein* v. *Western Assur. Co.*, 116 N. Y. 54, 59.) What did the parties mean by their contract? "The answer to this question is not to be found in any name which the parties may have given to the instrument, and not alone in any particular provisions it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account." (*Heryford* v. *Davis*, 102 U. S. 235, 244.)

When the two papers are read together they form a conditional contract for the sale of personal property, or what is commonly called, but not with strict accuracy, a conditional sale. (L. 1897, ch. 418, § 110.) According to its terms, the seller not only retained title to the property agreed to be sold, but also acquired title to all sums paid, while the purchaser promised to pay a certain sum down and the balance in installments. Although the word "deposit" is used, it means pay-

ment, because it was agreed that each deposit "when made shall be and become the absolute property of said second party." Thus the title to the sums "deposited" passed the same as in the case of money deposited in a bank, but not with the same rights to the so-called depositor, for no debt was created, as it was a partial payment for the ring. The ring was not to belong to the defendant until the purchase price was wholly paid, but still he had a present interest, because he was to become the owner on payment of the balance, and the value of his interest increased with each installment paid. There was no express provision as to possession of the ring in the meantime, but as it was delivered to the defendant when the papers were executed he had the right to retain possession until default in payment. The stipulation that conditions not expressed shall not be considered a part of the agreement does not control the ordinary rules of construction, or the obvious intention of the parties. (*Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664, 672.)

While the seller had the right to demand possession, he could not exercise that right, as we read the agreement, until the defendant failed to pay some installment. The stipulations relating to demand and default, when read in the light of actual delivery of the ring to the defendant, make the former dependent on the latter. In case of default in making any payment the seller had the right to take advantage of it by demanding the ring, or at his election, to accommodate the defendant by waiting upon his convenience for a longer or shorter period. When the default occurred and the seller made the demand, he thereby brought into action the last clause of the agreement and the demand was not complete until that clause was complied with. After the default he had a right to take possession of the ring and to keep all sums paid, but only on the condition that he should deliver to the defendant "articles, as near as may be, of the same nature, manufacture and style as" the ring and "reasonably worth the sums" paid and upon delivery thereof the agreement was to be regarded as "fulfilled and satisfied." In order to ter-

minate the contract by demanding the ring the seller was obliged to tender in goods the equivalent of the payments made. He could not keep all benefits received, take the ring also and leave the defendant with nothing but a right of action to get that which the seller had agreed to give. It was not for the purchaser to demand the articles to be given for payments made, but for the seller to offer them when he demanded the ring. The right to make the demand and the obligation to tender restitution or its equivalent in goods were concurrent, and the former was not complete until the latter was performed. As an effective demand would change the situation of the parties it was the duty of the one who wished to bring about that change to do what he had agreed in order to attain that result. A demand when properly made would not rescind the contract, but would " fulfill and satisfy " it as was expressly provided. Any other construction would authorize the purchaser not only to retake the property and keep what had been paid, but also to sue the purchaser for the balance unpaid.

The seller made a demand, but no tender, and hence the relations of the parties remained the same as before. The defendant had the right to retain possession of the ring until the check and money were restored or their equivalent in goods delivered. One-sided as the agreement was from any point of view the seller could not have everything and the purchaser nothing. The latter was entitled to but little at the most, but he could insist upon such rights as he had without being sent to prison for it. He stood upon his rights and the law sustains him in so doing. There was no felonious intent in keeping possession of the ring under the circumstances, and hence he was not guilty of any crime. There was no evidence to warrant the verdict of the jury. The judgment of conviction should be reversed and the defendant discharged.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment reversed, etc.