## HARGRAVES MILLS v. GORDON.

(Supreme Court, Appellate Division, First Department.    April 8, 1910.)

1. SALES (§ 4*)—NATURE OF TRANSACTION—BAILMENT OR SALE.

Plaintiff, a fabric manufacturer, executed a contract through a broker, reciting that plaintiff had sold to G. & Co. 6,000 to 7,000 pieces, about 50 yards each, woven double, first quality, silk filling, lappett dots, 28 inches wide, style 718, price 10 cents, terms 10 days. delivery f. o. b. mill; mill furnishing warp and paying for weaving, clipping, and baling; buyer to furnish silk on quills for filling, as required to run the looms, and to pay for mercerized yarn, to be bought by mill for dot; buyer to take seconds up to 5 per cent. at contract price. Goods were delivered under this contract until defendant notified plaintiff that no more would be accepted. The value of the material furnished by defendant exceeded that furnished by plaintiff, but that furnished by plaintiff greatly exceeded defendant's material in bulk. All the shipments as made were accompanied by invoices, reciting that plaintiff had sold so many pieces to defendant under the contract. *Held*, that the contract was one for the manufacture and sale of goods, and not a contract of bailment to furnish work, labor, and services to manufacture cloth from defendant's material.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 7–11; Dec. Dig. § 4.*]

2. SALES (§ 214*)—MANUFACTURE AND SALE—MATERIAL FURNISHED BY BUYER—TITLE.

Where defendant contracted to furnish silk and yarn to plaintiff mill for the manufacture and sale of cloth by plaintiff to defendant, the title to the silk and yarn so furnished passed to the mill, at least when it was woven into the goods, and remained in plaintiff until the goods were delivered to and accepted by defendant.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 214.*]

3. SALES (§ 384*)—CONTRACT—MATERIAL—FAILURE TO FURNISH—DAMAGES.

Where, as part of a contract for the manufacture and sale of cloth, the buyer was to furnish certain material, the seller was entitled to recover damages for loss of the use of his looms and the wages of the weavers while they were stopped because of the buyer's failure to furnish the material as agreed, whether the contract was for the manufacture and sale of the goods, or for work, labor, and services to be performed on the buyer's material.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

Miller, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Hargraves Mills against William S. Gordon. Judgment for defendant, and plaintiff appeals. Reversed, and new trial granted.

See, also, 121 N. Y. Supp. 1140.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Wallace MacFarlane, for appellant.
Walter D. Clark, for respondent.

LAUGHLIN, J. The appeal was taken originally from an order denying plaintiff's motion for a new trial, but thereafter a stipulation was made and filed withdrawing the appeal from the order, and it was

therein stipulated in behalf of the plaintiff that the evidence was sufficient to sustain the verdict on every question submitted, and that the only question it would seek to review on the appeal was the "question of law as raised by the exceptions, namely, whether the transactions between the parties constituted a sale or a bailment." The record, therefore, was prepared to present only the material evidence bearing upon·that question of law.

The plaintiff recovered a verdict for $951.72, which it claims is inadequate and resulted from erroneous rulings made by the trial court with respect to the nature of the action, by which it was improperly limited in its recovery. The plaintiff is a corporation organized under the laws of Massachusetts, and it has a plant for the manufacture of cotton cloths at Fall River in that state. The defendant was a merchant engaged in business in the city of New York under the name of W. S. Gordon & Co. He was known as a converter, and the business he conducted consisted in buying gray cloth made of cotton and silk and cotton in the rough as it comes from the looms, and of having it converted into a finished product and selling it to jobbers and to retail dealers, and occasionally, but not usually, he furnishes some of the material to be manufactured. The action is based on a contract in writing, and is brought to recover $4,019.81, being the purchase price of 850 pieces of cloth known as cotton goods, but consisting in part of silk, containing 40,198 yards, which were delivered to and accepted by the defendant, and $1,351.64, the value of mercerized yarn and silk purchased by the plaintiff for the defendant and used in the manufacture of said goods, and the freight charges paid thereon, and $1,859.26, being for a balance, over and above the sum of $911.55 paid to apply thereon, alleged to have been caused by defendant's failure to furnish silk in accordance with the contract to be used in the manufacture of the goods, which resulted in stopping the operation of many of the plaintiff's looms, making in all the sum of $7,230.61, for which amount, with interest thereon from May 15, 1902, plaintiff demanded judgment.

The first item of damages claimed only is involved in the appeal, and the single question presented is whether the contract was, as claimed by the plaintiff, an executory contract for the manufacture and sale of the cloth, or whether, as claimed by the defendant, it was a contract by which the plaintiff was employed to manufacture the goods which were in part furnished by the defendant, on which theory it would involve a bailment of the goods so furnished by the defendant and the performance of work, labor, and services thereon by the plaintiff. The court ruled upon the trial, and instructed the jury as matter of law, that the contract was not a contract for the manufacture and sale of the goods, but was for a bailment of goods, and for the performance of work, labor, and services thereon, and permitted the jury to allow defendant's second counterclaim on that theory. The plaintiff duly excepted to these rulings.

The plaintiff employed a broker to negotiate the contract for it, and it was made by the broker for both parties in the name of the treasurer of the plaintiff. The contract was as follows:

"New York, January 10, 1902.

"Sold to W. S. Gordon & Co., 256 Church St., N. Y., for acct. of Seth A. Borden, Treas., Fall River, Mass., 6,000 to 7,000 pieces, about 50 yards each, woven double, first quality, silk filling, lappett dots. Width, 28 inches. Style 718. Count, 88/92, 60's warp combed, silk filling. Price, 10 cents. Terms, 10 days. Delivery f. o. b. mill. About 500 pieces weekly, commencing first week in February; all by May 1st. Mill furnishing warp and paying for weaving, clipping, and baling. Buyer to furnish silk on quills for filling, as required to run the looms, and to pay for mercerized yarn, 60's 2-ply, to be bought by mill for dot. Buyer takes seconds up to 5% at contract price.

"D. O. Tatum, Broker.
"J. C. Tatum."

The parties accepted the contract as made for them by the broker, and it continued in force until on or about the 1st day of May, 1902, when the defendant gave notice to the plaintiff that he elected to terminate it and would receive no further goods thereunder. The plaintiff acquiesced in this notice, and ceased to manufacture under the contract, and did not ship any more goods. The plaintiff at this time had on hand some silk furnished by the defendant, which had been manufactured or partly manufactured into goods; but no question concerning that is involved on the appeal. The provisions of the contract are all consistent with plaintiff's contention, and most of them are inconsistent with defendant's theory of it. We find appropriate words for a contract of sale throughout the contract. It is stamped as a contract of sale by the use of the words and phrases "Sold to," "for acct. of," "price," "terms," "delivery," "buyer," "first quality," and "buyer takes seconds up to 5% of the contract price."

It is said that a printed blank was used, and that some of the terms were printed; but some of them were not printed, and were typewritten, and followed and carried out the same theory as is indicated by those which were printed. The provisions not essential to a contract of sale, which were typewritten, are consistent therewith, and their use is explainable on the theory that they were inserted through caution and for greater certainty, owing to the unusual feature by which the vendee was to furnish part of the material. Moreover, there is an entire absence of provisions which would ordinarily be inserted in a contract of employment to perform work, labor, and services on material delivered, viz., provisions with respect to the workmanship. If, however, the contract be deemed ambiguous on this point, the practical interpretation of it by the parties resolved all doubt in favor of plaintiff.

The defendant purchased and shipped to the plaintiff, during the time the contract was in force, 1,740 pounds of silk, which averaged 330,000 yards to the pound, and the plaintiff bought on defendant's account and by his direction 227 pounds of silk. The cost of the different materials per yard of the manufactured goods was, for the cotton warp, which was furnished by the plaintiff, $2\frac{1}{2}$ cents, for the mercerized yarn $\frac{1}{2}$ a cent, and for the silk between 7 and $7\frac{1}{2}$ cents; but the evidence tends to show that this should have been only about 5 cents, and that the increase in the cost of the silk used was owing to a waste of it by the plaintiff in the manufacture of the goods. The silk furnished by the defendant was, at the plaintiff's request, marked

to identify it, and to enable plaintiff to know "for what account to apply it to." The goods as manufactured were shipped by plaintiff, by direction of the defendant, to the Peerless Finishing Company to be converted into a finished product for sale to jobbers and retailers. The first shipment was made on the 8th day of February, 1902, and other shipments were made from time to time thereafter until about the 1st of May, 1902. The plaintiff manufactured and finished all of the yarn except a very small quantity, and it rendered bills to defendant for the yarn and for the silk purchased by it separate from the bills for the manufactured goods. Eight bills were introduced in evidence by the plaintiff, rendered by it to the defendant, all in the same form, only one of which is printed in the record. The plaintiff introduced in evidence 17 invoices of goods shipped by it to the defendant under the contract. They are all in the same form, and only one of them is printed. It contains the heading, after the date: "W. S. Gordon & Co. bought of Hargrave Mills," and specifies the terms of credit, and is for 50 pieces of goods, consisting of 2,412 yards.

There was considerable correspondence between the parties with respect to the goods, principally concerning complaints made by the defendant that the goods delivered were not of the quality required by the contracts. All of this correspondence on both sides, so far as printed in the record, is such as might be expected and as would naturally be had between the parties if they intended the contract as one for the manufacture and sale of the goods, and it contains no complaint with respect to the form of the invoices, and no claim or intimation by the defendant that the goods were manufactured under a contract of employment, or that the silk was delivered by the defendant as a bailment upon which the plaintiff was to perform work, labor, and services in manufacturing it into cloth. The defendant, however, on April 24, 1902, on returning five pieces of the goods to plaintiff, indorsed a bill to plaintiff therefor as if the transaction were a sale by defendant to plaintiff; but plaintiff refused to recognize the bill and delivered the goods. At one stage of the correspondence the defendant wrote the plaintiff under date of April 24, 1902:

"There does not seem to be any reason why we should accept any goods from you that are not first quality according to the terms of our contract. We have been buying this identical cloth from three other mills, and have had no complaint to make of their goods in any way. The goods they billed on the regular contract are first quality in every respect. The few seconds are billed separately; but we find you have shipped us unmerchantable goods that any first-class mill should be ashamed to send out even as seconds. The finisher is now laying aside from each bale received from you all the goods not first quality as per contract, and these will be returned to you every week. The finished goods on hand not first quality we shall sell 'as are' and charge you the difference. The finisher has accumulated a mass of evidence in the shape of samples cut from different pieces showing just what sort of goods you have been sending us as first quality. We were willing to do anything possible to arrange this matter amicably; but we have decided now to protect our own interests, and allow you to take whatever steps you think necessary to protect yours."

And a postscript thereto was as follows:

"We are sending you 5 pc. gray goods just received from finisher."

Prior to this time, and on April 7th, defendant wrote plaintiff:

"If you continue to make a loose, imperfect dot, we will not use the goods."

On the 29th of April the defendant again wrote the plaintiff, stating that he now notified the broker through whom the contract was negotiated, and notified plaintiff, that he would have the finisher examine and return to plaintiff any goods—

"that were not according to contract, first quality. They gave us a memorandum of eight bales yesterday, but after talking the matter over with Mr. Tatum we ordered the goods put into process, and shall sell the goods as seconds or 'as are,' and charge your account with the difference. In view of the fact that you declined to pay and account for the silk you have on hand of ours, we thought it best to keep in our possession all the goods on hand."

The learned counsel for the respondent contends that the furnishing of the silk and yarn by the defendant constituted a bailment locatio operis faciendi, and that, inasmuch as the silk and yarn which the defendant furnished, or was to furnish, under the contract, was of greater value than the warp furnished by the plaintiff, the title to the warp passed to the defendant by accession the moment it was woven into his silk and yarn in the loom. The authorities cited in support of that contention—Edwards on Bailments (3d Ed.) pp. 308, 314, 315; Brown on the Law of Bailments (Ed. 1896) pp. 57, 58, 317; Sattler v. Hallock, 160 N. Y. 298, 54 N. E. 667, 46 L. R. A. 679, 73 Am. St. Rep. 686; Mack et al. v. Snell, 140 N. Y. 201, 35 N. E. 493, 37 Am. St. Rep. 534—would be in point, and tend to sustain his claim, if it were consistent with the intention of the parties shown by the contract and by their subsequent correspondence, which gave it a practical construction and removed any ambiguity. The contract in this regard, as in all others, must be construed according to the intention of the parties as to whether it was a sale or bailment, if their intention be clear, and, if not, then as they have shown their intention by practical construction. Sattler v. Hallock, supra; Crosby v. President, etc., D. & H. Canal Co., 119 N. Y. 334, 23 N. E. 736; Norton v. Woodruff, 2 N. Y. 153; Hallory v. Willis, 4 N. Y. 76; Foster v. Pettibone, 7 N. Y. 433, 57 Am. Dec. 530; Matter of Nonmagnetic Watch Co., 89 Hun, 196, 34 N. Y. Supp. 1017; Buffum v. Merry, 3 Mason, 478, Fed. Cas. No. 2,112; Dixon v. London Small Arms Co., L. R. 1 App. Cas. 632.

Appropriate words are used in the contract to show that the parties intended it as a contract for the manufacture and sale of the goods, and, as has been seen, all of their correspondence indicates that they subsequently, until after their relations terminated, regarded it in the same light. The plaintiff was engaged in the business of manufacturing and selling goods, not in the business of hiring out its employés and loaning its looms for the manufacture of the goods of others. The contract is, of course, peculiar and apparently unusual, in that the defendant was to furnish some of the material; but, while the material furnished by the defendant was the more valuable, it was very small in bulk in proportion to the cotton warp furnished by the plaintiff. The reason which actuated the parties to make the contract with this provision—inserted, as to the silk, at least, at the in-

stance of the defendant, by which the defendant was to furnish the silk and yarn and pay for the warp separately—is not disclosed; nor is it material whether it was exacted by the defendant on the theory that he would prefer to take the risk of advantage or loss through any change in the market price of this part of the material, or because he thought he was in a position to obtain silk on more favorable terms than he would obtain it from the plaintiff if the contract price of the manufactured goods was fixed on a basis which would require the plaintiff to furnish it.

It may well be that the parties did not stop to consider in which of them the title to this property would be at any given time; nor is that controlling on the point presented for decision. We are of opinion, however, that the effect of their contract is that the title to the silk and yarn passed to the plaintiff, if not on delivery, at least when it was woven into cotton goods, and that it remained in plaintiff until the goods were delivered to and accepted by the defendant. Of course, if the plaintiff, on using the defendant's silk and yarn, refused to deliver the manufactured goods, the defendant would have had a cause of action against it, not only for the breach of the contract, but for the value of those goods. In no aspect of the case does it appear to have been contemplated by the parties that this was a bailment of raw material to be manufactured into goods, and that the title was to remain in the defendant. The plaintiff was not to use the defendant's silk and yarn as raw material upon which it was to perform work, labor, and services in transforming it into a finished product. As has been observed, the principal part of the manufactured goods in bulk and quantity was cotton furnished by the plaintiff. As well might it be said, therefore, that the work was to be performed on the plaintiff's cotton as on the defendant's silk and yarn.

The learned counsel for the defendant further contends that the plaintiff, by merely setting forth the contract in its complaint and alleging that it delivered the goods pursuant to the contract, without characterizing the transaction as a sale, is now estopped from questioning the defendant's characterization of the contract as one in bailment. It was not essential that the plaintiff should characterize the contract. The plaintiff set it forth in full and pleaded the facts, which is all that is required. When the question arises as to the nature of the contract, that becomes a question of law for the court to decide. The only other reason assigned for this contention is that the plaintiff sought to recover an item of damages which the defendant claims would not be recoverable if the contract is for the manufacture and sale of the goods. This item of damages is for loss of the use of the looms and for the wages of the weavers during the time the looms were stopped awaiting silk which the defendant had failed to furnish pursuant to his agreement. It was the duty of the defendant to furnish the silk in order to enable the plaintiff to manufacture the goods, and the plaintiff was not only justified, but it was its duty to be prepared with its looms and with its weavers to manufacture the goods, and if it was delayed through the fault of the defendant he would be liable for any damages which might have been foreseen and which

flowed from such default as the proximate cause, even though the contract be one for the manufacture and sale of the goods. There is, therefore, no inconsistency between the plaintiff's claim that the contract was for a sale of the goods and its assertion of a claim for damages arising out of the delay caused by defendant's failure to furnish the silk.

It follows, from these views, that the learned trial court erred in submitting the defendant's second counterclaim to the jury.

The judgment should therefore be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and CLARKE and SCOTT, JJ., concur. MILLER, J., dissents.