SEXTON v. FENSTERER et al.

(Supreme Court, Appellate Division, First Department. January 10, 1913.)

1. BILLS AND NOTES (§ 121*)—PARTIES—PRINCIPAL, SURETY, AND GUARANTOR.
    Under an arrangement whereby a drawer of drafts in Germany agreed to put New York bankers in funds 15 days before each draft was due, and they requested a Berlin correspondent to pay the drafts and to charge them on a general account, guaranteeing the correspondent against loss therefrom, the correspondent, on acceptance of a draft as between itself and the holder, became bound as a principal debtor, but as between itself and the drawer the drawer was the principal debtor.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 255, 256; Dec. Dig. § 121.*]

2. GUARANTY (§ 74*)—DISCHARGE OF GUARANTOR—PAYMENT.
    Defendant, doing business in New York and in Germany, guaranteed to put K. & Co., New York bankers, in funds to meet his drafts on a German bank 15 days before each was due. K. & Co. then requested the German bank to pay the drafts and charge them on general account, guaranteeing it against loss. K. & Co. failed at a time when the German bank had accepted drafts not due for more than 15 days and before defendant as drawer had put them in funds. The defendant provided the German bank with money to meet the drafts. Held, in an action by the trustee

---

in bankruptcy of K. & Co., that defendant thereby performed his obligation to K. & Co. and thereafter owed them nothing upon his guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 84; Dec. Dig. § 74.*]

3. SUBROGATION (§ 1*)—NATURE AND THEORY OF RIGHT.

Subrogation is based on the facts of each particular case, and is generally applied where one person is compelled for his own protection, or that of some interest which he represents, to pay a debt for which another is primarily liable.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 7, pp. 6721–6727; vol. 8, p. 7807.]

4. SUBROGATION (§ 7*)—SURETIES—SUBROGATION TO RIGHTS OF CREDITORS.

A surety, who pays the debt of his principal, is subrogated to all the securities, liens, and equities held by the creditor against the principal, and entitled to enforce them against the principal in a court of equity.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 38, 77, 83, 92; Dec. Dig. § 7.*]

5. BILLS AND NOTES (§ 75*)—ACCOMMODATION ACCEPTOR—NATURE OF LIABILITY.

An accommodation acceptor of a bill, as between himself and the drawer, in equity occupies the position of a surety.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 136; Dec. Dig. § 75.*]

6. SUBROGATION (§ 7*)—SURETIES—SUBROGATION TO RIGHTS OF CREDITORS.

A surety for the drawer of a bill, on payment, is subrogated to the rights of the holder.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 38, 77, 83, 92; Dec. Dig. § 7.*]

7. SUBROGATION (§ 7*)—SURETIES—SUBROGATION OF PRIOR SURETY.

A prior surety, compelled to pay a debt, will be subrogated to the rights of the creditor against the subsequent surety.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 38, 77, 83, 92; Dec. Dig. § 7.*]

8. PRINCIPAL AND SURETY (§ 147*)—RIGHTS OF CREDITOR—RECOURSE TO INDEMNITY TO SURETY.

A creditor, whose debt is due, is subrogated to the benefit of securities and indemnities furnished by the principal to the surety, since the securities in the hands of the sureties having been appropriated by the debtor to pay the debt, and constitute a trust which equity will enforce for the benefit of the creditor.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 402–412; Dec. Dig. § 147.*]

9. PRINCIPAL AND SURETY (§ 147*)—PARTIES TO BILLS AND NOTES—ACCEPTOR.

Where defendant guaranteed to put bankers in funds 15 days before the time his drafts should become due, and they guaranteed a foreign correspondent against loss on the payment of such drafts, the correspondent, on acceptance of such drafts, was subrogated to the securities and guaranties of the drawer held by the bankers, including defendant's guaranty of funds, so that defendant's voluntary payment to the correspondent of drafts which it had accepted, but not charged to the bankers, amounted to a discharge both of his bankers' obligation to the correspondent and his guaranty to his bankers.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 402–412; Dec. Dig. § 147.*]

McLaughlin, J., dissenting.

---

Action by Lawrence E. Sexton, as trustee in bankruptcy, etc., of Kessler & Co. against Gabriel Fensterer and Francis H. Ruhe, copartners as Fensterer & Ruhe. Verdict was directed for the defendants, and plaintiff took exceptions, which were ordered to be heard in the first instance by the Appellate Division. Exceptions overruled, and judgments ordered for defendants on the verdict.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Wallace Macfarlane, of New York City, for plaintiff.
Francis H. Kinnicutt, of New York City, for defendants.

INGRAHAM, P. J. There was no substantial dispute as to the facts. At the end of the trial both parties moved for the direction of a verdict. The court denied the plaintiff's motion for the direction of a verdict in favor of the plaintiff, and granted a motion directing a verdict for the defendants, to which the plaintiff excepted, and ordered the exceptions to be heard in the first instance by this court.

Kessler & Co., the bankrupts, were bankers doing business in the city of New York, and the defendants were engaged in business in New York and Germany. Mr. Gabriel Fensterer, one of the defendants, was in Germany and carried on business there in connection with the business carried on by his firm in New York; the business of the defendants' firm being transacted in New York by Mr. Ruhe, the other member of the copartnership. There was a firm of Leffler, Thiele & Co., with whom the defendants had business transactions in Germany. The bankrupts failed on October 30, 1907, and on that day made a general assignment for the benefit of creditors. On November 8, 1907, a petition in involuntary bankruptcy was filed against the bankrupts, and they were subsequently adjudicated bankrupts, and the plaintiff was appointed trustee. There was also a firm doing business in Berlin, in the empire of Germany, under the firm name of Delbruck, Leo & Co. For a number of years prior to April, 1906, there had been what was called a credit arrangement between the bankrupts and the defendants, which had for its object the giving of defendants credit in Germany in their financial transactions there, and on April 9, 1906, to continue this arrangement, the defendants wrote to the bankrupts, requesting the bankrupts to issue—

"a credit to us for the firm of Leffler, Thiele & Co., No. 47 Murray St., drawn to the favor of Mr. G. Fensterer, of Berlin, Germany. We, the undersigned firm, guarantee the payment of any drafts drawn by our Mr. G. Fensterer in Europe under this letter of credit. The letter of credit to be issued to the above-named firm, Leffler, Thiele & Co., to be M20,000 per month and to be in force until canceled."

In consequence of this application the bankrupts wrote to Messrs. Delbruck, Leo & Co., on April 10th, as follows:

"By these respects we ask you to kindly pay, as heretofore, the 90 days' sight drafts of Mr. Gabriel Fensterer, Berlin, for account of Messrs. Leffler, Thiele & Co., New York, and to debit us therefor each time under advice to us. The drafts of said gentleman may read M20,000 per month, and this credit is to remain in force until cancellation on our part."

And Delbruck, Leo & Co., under date of April 21, 1906, acknowl-edged the receipt of this letter, and noted that the bankrupts—

"accredit with us until further notice Mr. Gabriel Fensterer, of Berlin, on account of Leffler, Thiele & Co., of New York, to the amount of 20,000 marks monthly, to be drawn in drafts at 90 days after sight."

On April 23, 1906, Mr. Gabriel Fensterer wrote Delbruck, Leo & Co., at Berlin, stating that he had been informed by his firm in New York that a credit of 20,000 marks per month had been opened in his favor by that firm through the New York banking concern of Messrs. Kessler & Co., and that he would, as on former occasions, dispose of this amount by drawing his drafts at 90 days' sight, these drafts to be covered in New York as in former cases through his New York firm in accordance with the arrangement made with the New York firm of Kessler & Co. In reply to such letter Delbruck, Leo & Co. confirmed the arrangement that Kessler & Co., in New York, had opened with them in Mr. Fensterer's favor, on account of Leffler, Thiele & Co., a credit of 20,000 marks monthly, which is to be disposed of by drafts at 90 days after sight until recalled. The arrangement was thus com-pleted, and the manner of transacting this business seems to have been that Mr. Fensterer, in Germany, drew drafts at 90 days' sight on Del-bruck, Leo & Co.; that Delbruck, Leo & Co. accepted these drafts, information of which was transmitted to the bankrupts in New York, for which the defendants paid to the bankrupts 15 days before the drafts became due to the amount required to meet the drafts in Ger-many; and this sum was then transmitted by the bankrupts to Del-bruck, Leo & Co. to provide for the payment of the drafts. Thus be-fore the drafts became payable the defendants had provided the money through the bankrupt firm to meet the payments in Berlin. All the drafts that had become payable prior to the time of the bankrupts' fail-ure had been provided for under this arrangement, but there were out-standing at the time of the bankrupts' failure a number of drafts drawn by Mr. Fensterer on Delbruck, Leo & Co., and accepted by them, but which were not then due. No funds had ever been received from the bankrupt firm to cover these outstanding acceptances of Delbruck, Leo & Co. Kessler & Co., the guarantors, having failed, Delbruck, Leo & Co. entered into negotiations with one of the defendants, Ga-briel Fensterer, who had drawn the drafts, and demanded of Gabriel Fensterer the payment of the drafts drawn by him, and which had been accepted by Delbruck, Leo & Co., whereupon Mr. Gabriel Fen-sterer himself, in the name of the defendants, provided the funds with which these drafts were paid, and, having been paid, no claim was made against the bankrupts on account of these acceptances. During all this time Mr. G. Fensterer was the agent of Leffler, Thiele & Co. in Germany, buying goods for them, and the funds obtained by Ga-briel Fensterer for the discounting of these notes were expended in making purchases for the account of Leffler, Thiele & Co.

[1, 2] It thus appears that, in the arrangement between the defend-ants and the bankrupt firm of Kessler & Co., the defendants guaran-teed the payment of any drafts drawn by "our Mr. G. Fensterer" in Europe, and upon that guaranty Kessler & Co. requested Delbruck,

Leo & Co. to pay the 90-day sight drafts of Mr. G. Fensterer, and to debit Kessler & Co. therefor. Under this guaranty no obligation of defendants existed until Delbruck, Leo & Co. had paid the drafts drawn by G. Fensterer. So far as appears by the arrangement, there was no agreement that Delbruck, Leo & Co. should accept these drafts, although undoubtedly such an acceptance was contemplated as necessary to carry out the arrangement which was made; but under the guaranty the obligation to pay arose upon payment, not upon acceptance. The actual method adopted by the parties was for the defendants to furnish Kessler & Co. in New York with money to pay the maturing drafts 15 days before the due day, to enable Kessler & Co. to transmit that money to Delbruck, Leo & Co. in time to meet the drafts when due. Thus at the time of Kessler & Co.'s failure the outstanding drafts which are involved in this action had not become due, nor had there arisen any obligation on behalf of the defendants to furnish Kessler & Co. money to pay the drafts, as they were all due more than 15 days after the bankrupts' failure, and therefore the defendants had not furnished Kessler & Co. the money to pay the drafts, nor had Kessler & Co. furnished Delbruck, Leo & Co. the money to meet them when due.

The situation that then existed, therefore, was that one of the defendants had drawn its draft upon Delbruck, Leo & Co. which was payable 90 days after sight, which draft Delbruck, Leo & Co. had accepted, and thus became bound as principal debtors to the holders of the draft. But, as between Delbruck, Leo & Co. and the defendants, the drawer of the draft, one of the defendants, was the principal debtor. If Delbruck, Leo & Co. had paid these drafts, they could have quite clearly recovered from the drawer of the drafts, one of the defendants, the amounts that they had paid. It is true that Kessler & Co. had undertaken that, if Delbruck, Leo & Co. had paid the drafts, they could debit Kessler & Co. with the amount of the payments, and defendants had guaranteed to Kessler & Co. that these drafts would be paid— clearly meaning, I think, they would be paid by the drawer of the draft, who was a member of the defendant's firm. The object was, not to protect the holders of the accepted drafts, but to protect Delbruck, Leo & Co. from having to pay drafts drawn by G. Fensterer, in case G. Fensterer did not furnish the funds necessary to pay the drafts. In other words, Kessler & Co. guaranteed Delbruck, Leo & Co. against any loss by payment of the drafts, and the defendants guaranteed Kessler & Co. from any loss in consequence of their guaranty to Delbruck, Leo & Co. Under this arrangement, as I view it, the principal debtor remained G. Fensterer or the defendants and no obligation ever existed as against Kessler & Co. or the defendants until Delbruck, Leo & Co. had actually paid the drafts. If this is the correct situation it seems to me entirely clear that the principal debtor, G. Fensterer or the defendants, not only had the right, but they were bound, to provide funds to meet these drafts, accepted by Delbruck, Leo & Co., before they became due, and if they performed that obligation no liability of Kessler & Co. existed, and there was nothing due by the defendants to Kessler & Co. under their guaranty.

Assuming that Kessler & Co. had not failed, but had continued business after October 30, 1907, and that Mr. G. Fensterer, in Berlin, had taken up the accepted drafts before they became due, certainly Kessler & Co. would have had no claim against these defendants for the repayment of these drafts. They would never have been debited in their account with Delbruck, Leo & Co. with the amount of the drafts which the drawer had actually paid, and Kessler & Co. could have had no claim against the defendants under their guarantee. The failure of Kessler & Co. did not, it seems to me, at all change this situation. After the failure G. Fensterer, the drawer of the drafts accepted by Delbruck, Leo & Co., did just what he might have done at any time. He paid the drafts when they became due, and this was just what the drawer of the drafts did after Kessler & Co. had failed. The moment these accepted drafts were paid by defendants, Delbruck, Leo & Co. had no possible claim against Kessler & Co. no claim that Delbruck, Leo & Co. could have proved in bankruptcy, and no obligation then existed, or ever had existed, by which Kessler & Co. became liable to Delbruck, Leo & Co. But, even assuming that Delbruck, Leo & Co., by reason of their failure, or for any other reason, had failed to provide the necessary funds to meet the accepted drafts, I think it clear that Delbruck, Leo & Co. could have at once sued the drawer of the drafts and disregarded the guaranty of Kessler & Co. It is true that Kessler & Co. had guaranteed Delbruck, Leo & Co. on the payment of the drafts, and had authorized Delbruck, Leo & Co. to debit Kessler & Co. with the amount necessary to pay them; but, as before stated, the drawer of the drafts was, as between the parties to the instruments, the principal debtor; Kessler & Co. standing only in the place of the guarantor. Assuming Delbruck, Leo & Co., the guarantors, to have failed, holding a guaranty of the payment of the drafts executed by the defendants, it seems to me quite clear that, upon the doctrine of equitable subrogation, Delbruck, Leo & Co. would have been entitled to enforce the guaranty as against these defendants.

[3, 4] It is a general principle that subrogation is a form of equity jurisprudence. It is founded on the facts and circumstances of each particular case and on the principle of natural justice. It is applied where one person is compelled for his own protection, or that of some interest which he represents, to pay a debt for which another is primarily liable. Am. & Eng. Enc. of Law (2d Ed.) vol. 27, p. 203. And it is also a general rule that a surety who pays the debt of his principal will be subrogated to all the securities, liens, equities, rights, remedies, and priorities held by the creditor against the principal, and entitled to enforce them against the latter in a court of equity or of equitable jurisdiction.

[5, 6] And in the case of an accommodation acceptor of a bill:

"As between himself and the drawer he in equity occupies the position of a surety, and on payment of the bill is entitled to be subrogated to the rights of the holder." Id. 231.

[7] And the rule is also stated at page 225:

"On the other hand the weight of authority is that where the prior surety is compelled to pay the debt he will be subrogated to the right of the creditor against the subsequent surety."

[8] And in 37 Cyc. 437, it is said:

"A creditor whose debt is due is subrogated to the benefit of securities and indemnities furnished by the principal to the surety. * * * The rule extends to guarantors and indorsers, and where a third person for a present consideration guarantees the payment of an existing debt, and the debtor executes to him a mortgage conditioned for a payment of the indebtedness to the creditor and an indemnification of the guarantor, the creditor by substitution is entitled to the benefit of the security."

See M. & M. Bank v. Cummings, 149 N. Y. 360, 44 N. E. 173, and National Bank of Newburgh v. Bigler, 83 N. Y. 51, where, in speaking of this doctrine of equitable subrogation, it is said:

"Its true basis is not to be found in the different and varying circumstances of the cases, but in the equitable consideration, common to them all, that the securities in the hands of the sureties have been appropriated by the debtor for the payment of the debt, and constitute a trust for its better security, which equity will enforce for the benefit of the creditor."

[9] These principles of equitable subrogation are too familiar to require further authority. It is applied in favor of the creditor, where for any reason equitable considerations require the application of the security or guaranties of a debtor to be applied to the discharge of the indebtedness; and applying this principle to this case it seems to me that Delbruck, Leo & Co. having at the request of Kessler & Co. assumed liability by accepting the paper of Gabriel Fensterer, became subrogated to the right to all securities and guaranties held by Kessler & Co. to secure the payment of that indebtedness. Kessler & Co. had guaranteed the payment of the notes drawn on Delbruck, Leo & Co. by Gabriel Fensterer, and these defendants had guaranteed Kessler & Co. against the payment of those notes. Whatever security, therefore, Kessler & Co. had to protect themselves as against any obligation which it had assumed to Delbruck, Leo & Co., the latter, as the creditor, had the right to enforce for its protection upon the failure of Kessler & Co. and its consequent inability to comply with its obligation. And by virtue of this equitable subrogation Delbruck, Leo & Co. had the right to enforce the defendants' guaranty to Kessler & Co., and thus the voluntary payment of that obligation by the defendant to Delbruck, Leo & Co. was a discharge of its obligation to that firm as the acceptor of these notes, and was therefore a satisfaction of any obligation that existed between the defendant and Kessler & Co.

It follows, therefore, that upon no aspect was there any obligation ever existing in favor of Kessler & Co. or its assignee in bankruptcy against the defendant, and the court was quite right in directing a verdict for the defendants.

The exceptions are therefore overruled, and judgment ordered for the defendants on the verdict, with costs.

LAUGHLIN, MILLER, and DOWLING, JJ., concur.

McLAUGHLIN, J. (dissenting). The defendants agreed with Kessler & Co. that, if they would procure the acceptance in Germany of drafts drawn for the benefit of Leffler, Thiele & Co., they would pay

to Kessler & Co. the amount of each draft prior to the time the same. fell due, and in addition certain commissions. The drafts were to be drawn by Gabriel Fensterer, acting as the agent of Leffler, Thiele & Co. In pursuance of this agreement Kessler & Co. procured the drafts here under consideration to be accepted by Delbruck, Leo & Co. Prior to the acceptance, Delbruck, Leo & Co. agreed with Kessler & Co.—not with the defendants—to accept and pay the drafts for the account and to the debit of Kessler & Co., and it was under this arrangement that the drafts were accepted and in each instance charged to Kessler & Co. The defendants made no contract, either express or implied, with Delbruck, Leo & Co., and were not known in the transactions, so far as appears, until after Kessler & Co. became bankrupts. In each instance, as soon as Delbruck, Leo & Co. accepted a draft, they charged the amount of it, not to the defendants, but to Kessler & Co., plus their commissions, and, on receiving a remittance from them, credited same in general account. When a draft was paid, Delbruck, Leo & Co. charged interest to Kessler & Co. on the amount of the acceptance, and credited Kessler & Co. with interest on their remittances, and all the items were settled in general account between Delbruck, Leo & Co. and Kessler & Co. every six months. Whenever a draft was accepted, Delbruck, Leo & Co. wrote a letter to Kessler & Co., advising them that the draft had been drawn "for your account," and that they had accepted it "to your debit for payment on account ordinario"—that is, general account. Kessler & Co., on receiving from Delbruck, Leo & Co. advice of an acceptance, credited it with the amount, and immediately notified the defendants of the acceptance, stating the amount of the draft, the due date, and concluding with the words, "Note that the same is to be covered"— that is, paid to us—"by you 15 days before maturity."

The correspondence and the acts of the parties prior to the failure of Kessler & Co. indicate, as it seems to me, an intention on the part of all the parties that Kessler & Co. alone should be liable to Delbruck, Leo & Co. The fact that the drafts were drawn by Gabriel Fensterer, one of the defendants, does not seem to me to be of importance, because the record shows, and I do not understand that the fact is disputed, that in drawing the drafts he acted, not for the defendants, but as the agent of Leffler, Thiele & Co. Nor does the fact that the defendants in their letter to Kessler & Co. said they would "guarantee the payment of any drafts" change the situation. The real question is: What did the parties intend? Such intention must be ascertained from the correspondence, read in the light of what they did. Herryford v. Davis, 102 U. S. 235, 26 L. Ed. 160, quoted with approval in People v. Gluck, 188 N. Y. 167, 80 N. E. 1022; Hargraves Mills v. Gordon, 137 App. Div. 695, 122 N. Y. Supp. 245, affirmed 203 N. Y. 568, 96 N. E. 1116. When thus ascertained, it seems to me to show that Delbruck, Leo & Co. was to accept the drafts drawn solely on Kessler & Co.'s credit, and not upon the credit of the defendants, or Leffler, Thiele & Co., or, in the case of the other draft, of the Block Light Company. If this were the intention, then Delbruck, Leo & Co. had a claim against the bankrupt's estate, and it, in

turn, had a claim against the defendants. The defendants could not satisfy that claim by paying the same to Delbruck, Leo & Co. To hold otherwise is to permit Delbruck, Leo & Co. to get its pay in full, while the other creditors will receive only such dividend as the bankrupt's estate may yield. Defendants could not extinguish an indebtedness to the bankrupt by paying the amount of it to one of the latter's creditors, to whom they were in no way obligated. Such payment would constitute a preference under the statute. Nat. Bank of Newport v. Nat. Herkimer Bank, 225 U. S. 178, 32 Sup. Ct. 633, 56 L. Ed. 1042; In re Sanderson (D. C.) 149 Fed. 273; Western Tie & Lumber Co. v. Brown, 129 Fed. 728, 64 C. C. A. 256.

For these reasons, I am unable to concur in the prevailing opinion. I am of the opinion that the exceptions should be sustained, and a new trial ordered.